Prob 12 (10/09)
VAE (rev. 5/23)

# UNITED STATES DISTRICT COURT
## for the
## EASTERN DISTRICT OF VIRGINIA

U.S.A. vs. Mujahid Nasiruddin _____    Docket No. 1:97CR00223 _____

### Petition on Supervised Release

COMES NOW Alexandria Watson, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Mujahid Nasiruddin, who was placed on supervision by the Honorable Richard L. Williams, United States District Judge sitting in the Court at Alexandria, Virginia, on the 10th day of December, 1997, who fixed the period of supervision at three (3) years, and imposed the general terms and conditions heretofore adopted by the Court and also imposed special conditions and terms as follows:

See Attachment(s)

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**

See Attachment(s)

*This case was reassigned to the Honorable Claude M. Hilton on February 19, 2021.*

*This case was reassigned to the Honorable Michael S Nachmanoff on February 24, 2026.*

**PRAYING THAT THE COURT WILL ORDER** a summons to be issued directing that the offender appear before the Court to show cause why supervision should not be revoked.

**ORDER OF COURT**

Considered and ordered this 15th day of July, 20 26 and ordered filed and made a part of the records in the above case.

/s/
Michael S. Nachmanoff
United States District Judge

Michael S. Nachmanoff
United States District Judge

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on: July 14, 2026

Alexandria Watson
Senior U.S. Probation Officer

Place Richmond, Virginia

**TO CLERK'S OFFICE**

Petition on Supervised Release
Page 2
RE: Nasiruddin, Mujahid

OFFENSE: Aggravated Sexual Abuse, in violation of Title 18 U.S.C. §§ 2241(a)(1) and (2)

SENTENCE: 365 months of imprisonment; 3 years of supervised release; and a $100.00 special assessment.

SPECIAL CONDITIONS:
1. The defendant shall participate in a program approved by the United States Probation Office for mental health treatment, to include a psychosexual evaluation and sex offender treatment. The costs of these programs are to be paid by the defendant as directed by the probation officer. The defendant shall waive all rights of confidentiality regarding sex offender/mental health treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.
2. The defendant shall submit to periodic polygraph testing at the discretion of the probation officer to ensure compliance with the requirements of the defendant's supervision and/or treatment program. The costs of the testing are to be paid by the defendant, as directed by the probation officer.
3. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall register with the state sex offender registration agency in any state where the defendant resides, works, and attends school, according to federal and state law and as directed by the probation officer.
4. Pursuant to the Adam Walsh Child Protection and Safety Act of 2006, the defendant shall submit their person, property, house, residence vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation of release. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that the defendant has violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.
5. At the direction of the probation office, the defendant shall disclose his criminal history to any employer and shall permit the probation office to verify his compliance with this requirement. The defendant's employment must be preapproved by the probation office.
6. The defendant consents to all standard and special conditions imposed in the written judgment, to include any conditions that were imposed or modified following original sentencing under Case No. 1:97-CR-00223-001.
7. If the defendant tests positive for controlled substance or shows signs of alcohol abuse, the defendant shall participate in a program approved by the United States Probation Office for substance abuse, which program may include residential treatment and testing to determine whether the defendant has reverted to the use of drugs or alcohol, with partial cost to be paid by the defendant, all as directed by the probation officer. The defendant shall waive all rights of confidentially regarding substance abuse treatment to allow the release of information to the United States Probation Office and authorize communication between the probation officer and the treatment provider.

PRIOR VIOLATIONS:
On August 22, 2024, the Courts issued a summons to address additional conditions being added to Mr. Nasiruddin and to address housing. On August 30, 2024, the requested special conditions were added, and Mr. Nasiruddin was granted permission to move to Richmond to reside with family.

On February 26, 2026, the Court approved a No Action Violation Report which reported positive urine specimens for marijuana on February 10, March 10 and April 10 of 2025 and January 21, 2026. He was placed on phase

**Petition on Supervised Release**
**Page 3**
**RE: Nasiruddin, Mujahid**
testing and ordered to complete substance abuse treatment.

ADJUSTMENT TO SUPERVISION:
Since commencing supervision, Mr. Nasiruddin has demonstrated periods of both compliance and noncompliance with the conditions of supervision. In 2025, Mr. Nasiruddin initially tested positive for marijuana and attributed his use to ongoing mental health concerns. In response, he was placed on Code-A-Phone and ordered to complete a psychological evaluation. Following the evaluation, he stabilized on prescribed medication, submitted several months of negative urinalysis results, obtained his Commercial Driver's License (CDL), and secured full-time employment.

At the beginning of 2026, Mr. Nasiruddin again tested positive for marijuana. Although he consistently denied using illegal substances, suggesting the positive results may have been caused by a dietary supplement, he continued to test positive after reportedly discontinuing the supplement. As a result, he was referred for a substance abuse assessment and subsequently enrolled in outpatient substance abuse treatment.

Mr. Nasiruddin began substance abuse treatment in March 2026. However, due to disruptive behavior, argumentative interactions with his treatment provider, and failure to comply with program expectations, he was unsuccessfully discharged from the program. The undersigned officer coordinated communication between Mr. Nasiruddin and the treatment provider, resulting in a triad meeting during which supervision and treatment expectations were reviewed and clarified. Following the meeting, the treatment provider agreed to allow Mr. Nasiruddin to re-enter the program, and he resumed participation in services.

During this period, Mr. Nasiruddin also missed several scheduled urinalysis appointments, requiring follow-up by the undersigned officer. He attributed the missed tests to conflicts related to his commercial driving employment, transportation issues, and scheduling conflicts. Mr. Nasiruddin was repeatedly counseled regarding his responsibility to maintain communication with the Probation Office, comply with all testing requirements, and obtain prior approval before traveling outside the district for employment purposes.

Despite these interventions, on June 22, 2026, Mr. Nasiruddin was again unsuccessfully discharged from substance abuse treatment after engaging in additional disruptive behavior and failing to comply with the rules and expectations of the treatment program.

Due to Mr. Nasiruddin's continued substance use, missed urinalysis appointments, and ongoing treatment concerns, the undersigned officer requested a modification of the conditions of supervision to formally require substance abuse treatment and testing. Although Mr. Nasiruddin has recently produced several consecutive negative drug screens and he has several times failed to report believing he can report the next day and on one occasion 3 days after being instructed. His history of repeated positive drug tests, missed urinalysis appointments, and two unsuccessful discharges from treatment for failing to follow the rules is the reason for the Probation office request for court intervention.

**Petition on Supervised Release**
**Page 4**
**RE: Nasiruddin, Mujahid**

VIOLATIONS: The following violations are submitted for the Court's consideration.

**STANDARD CONDITION #2:     FAILING TO REPORT AS INSTRUCTED**

On February 19, 2026, Mr. Nasruiddin signed the Code-A-Phone instructions, acknowledging that he was required to call the Code-A-Phone line daily to determine whether he was required to report for a drug screen the following day.

On April 10, April 27, May 6, June 4, June 15, and July 2, 2026, Mr. Nasruiddin failed to report to the Probation Office for scheduled drug screens. Regarding these missed tests:

April 10 and April 27: Mr. Nasruiddin acknowledged that he failed to call the Code-A-Phone line.

May 6: When questioned the following day, he stated that he was stuck in traffic and assumed he could report the next day to make up the missed test.

June 4: He reported that the Code-A-Phone line did not indicate that he was required to test.

June 15: He stated that he was working and unable to report, and that he intended to report the following day instead.

July 2: He acknowledged that he did not call the Code-A-Phone line.

**STANDARD CONDITION #7:     USE OF COCAINE, AND MARIJUANA**

On February 10, 2025, March 10, 2025, and April 10, 2025, Mr. Nasruiddin submitted urine samples that were confirmed positive for marijuana by the national lab. An interpretation report was completed and determined that there was new marijuana use through April 10, 2025.

On January 21, 2026, February 26, 2026, and March 11, 2026, Mr. Nasruiddin submitted urine samples that were confirmed positive for marijuana by the national lab. He additionally had confirmed results on April 7, 2026, and April 13, 2026, however an interpretation report was completed and determined that there was new marijuana use through the March 11, 2026, specimen, but no new use was indicated with the April 7, 2026, specimen.

Additionally, on March 11, 2026, Mr. Nasruiddin submitted a urine sample that was confirmed positive for cocaine by the national lab.

ANW/